UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------
:
CATHY PFAFF, *on behalf of herself and* :
*all other similarly situated individuals*, :
: CASE NO. 1:09-cv-02954
Plaintiff, :
:
vs. : OPINION & ORDER
: [Resolving Doc. No. 32]
WHOLE FOODS MARKET GROUP INC., :
*et al.* :
:
Defendants. :
:
------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this putative consumer class action case based on claims that grocery chain Whole Foods failed to satisfy its advertised 10% case discounts, Plaintiff Cathy Pfaff seeks to certify a class of Ohioans who purchased a case of products from Whole Foods but did not receive the case discount. [Doc. 32-1.] Defendants Whole Foods Market Group and Corporate Does 1-10 (collectively "Whole Foods") oppose the motion. [Doc. 34.] Plaintiff has replied. [Doc. 41.]

For the following reasons, the Court **GRANTS** class certification but modifies the class.

**I. Background**

Whole Foods is a nationwide grocery chain that operates six stores in Ohio. [Doc. 34 at 7.] Prior to September 2008, Whole Foods periodically offered its customers a 5% case discount on grocery items and 10% case discount on wine. [Doc. 41-1 at 15.] Whole Foods says it offered the discount to increase store sales while at the same time giving its customers extra savings for bulk

-1-

Case No. 1:09-CV-2954
Gwin, J.

buying. [Doc. 41-1 at 15.] After "good results," on September 8, 2008 Whole Foods began offering shoppers a 10% case discount on all products in all its departments. [Doc. 41-1 at 15.]

Most products Whole Foods sells can be purchased as a case and are eligible for the case discount, even if the product is typically sold as a single unit: "Customers wanting a case of something off the shelf (Cereal for example) should ask a [Whole Foods employee] and the [employee] should box up the product for them." [Doc. 41-1 at 15.] The case definition varies for different products. For example, a customer must buy twelve jars of baby food or twenty-four cans of soda to get the case price. [Doc. 34 at 8.]

Each Whole Foods store retains some discretion when serving the community where it is located. [Doc. 34 at 8.] Whole Foods' internal communication regarding the case-discount program reflects this decentralized structure: "Store Leadership are empowered to bend any of these [case-discount] guidelines . . . as they see fit circumstantially in their store." [Doc. 41-1 at 15.]

Whole Foods' customers, on the other hand, see only a uniform and consistent case-discount message with no qualifications: "Get more of the good stuff for less! 10% off a case of anything"; "10% off all cases"; "Buy a case, get 10% off!"; and "Buy 6 Bottles Get 10% off!" [Doc. 41-1 at 16; Doc. 32-1 at 6.] Whole Foods advertises the case-discount program and also uses placards to promote the discount throughout its stores and posted above its products. [Doc. 32-1 at 6.]

In May 2010, Plaintiff Cathy Pfaff saw a case-discount advertisement in an Ohio Whole Foods store and purchased a case of 365 brand water but did not receive the advertised 10% discount. [Doc. 32-1 at 6; Doc 23-4.] Pfaff says she bought a case instead of a lesser quantity because of the advertised discount. [Doc. 32-1 at 6.] Although advertising the 10% discount, Whole Foods apparently never coded it registers to actually give the discount. Initially, Pfaff was unaware

Case No. 1:09-CV-2954
Gwin, J.

Whole Foods did not give her the 10% off case discount and she did not ask for the discount because—like most shoppers—she "believed it would automatically be provided through being programmed into the Defendants' cash registers." [Doc. 32-1 at 4.]

Likewise, Whole Foods' internal communication to its employees says that the case discount is automatic and programmed into its registers. Cases of most items with a bar code are configured in Whole Foods' point-of-sale system and cashiers apply the discount at checkout through a "case discount key." [Doc. 41-1 at 15.] That same communication also says that when a cashier uses the case discount key, he or she does not have to know how many individual products are in the case—the point-of-sale system automatically calculates the case price including the 10% discount. [Doc. 41-1 at 15.]

Pfaff alleges that after extensively advertising 10% case discounts, Whole Foods intentionally and uniformly failed to program its registers to subtract 10% off cases while at the same time telling its employees and customers that the case discount was being applied. [Doc 32-1 at 8.] Accordingly, Pfaff brings claims for: (1) fraud; (2) breach of contract; (3) breach of the duty of good faith and fair dealing; (4) negligent misrepresentation; (5) violation of the Ohio Consumer Sales Practices Act; (6) unilateral mistake; and (7) unjust enrichment. [Doc 23-1 at 2.]

## II. Law and Analysis

Rule 23 of the Federal Rules of Civil Procedure governs class action lawsuits. Fed. R. Civ. P. 23. A court may certify a class action if all of the Rule 23(a) procedural requirements are met, and if certification is appropriate under Rule 23(b)(1), (b)(2) or (b)(3). *Id*. The party seeking certification bears the burden of proof. *In re Am. Med. Sys., Inc*., 75 F.3d 1069, 1079 (6th Cir. 1996). District courts have broad discretion in certifying a class, but must conduct a "rigorous

Case No. 1:09-CV-2954
Gwin, J.

analysis" into whether the prerequisites of Rule 23 have been met. *See Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 161 (1982); *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc).

In reviewing a class certification motion, the court does not evaluate the merits of the plaintiff's claims and accepts the complaint allegations as true. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178 (1974). The court, however, may need "to probe behind the pleadings before coming to rest on the certification question." *Falcon*, 457 U.S. at 160. In fact, although maintainability may be determined on the basis of the pleadings, "ordinarily the determination should be predicated on more information than the pleadings will provide. . . . The parties should be afforded an opportunity to present evidence on the maintainability of the class action." *Am. Medical Sys.*, 75 F.3d at 1079 (considering evidence in record presented by nonmoving party in reversing district court's order granting class certification).

Rule 23(a) sets forth four prerequisites to class certification: (1) the class must be so numerous that "joinder of all members is impracticable"; (2) there must be "questions of law or fact common to the class"; (3) the claims of the representative party must be "typical" of those of the class; and (4) the representative party must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a). Rule 23(b) has two components: (1) predominance; and (2) superiority. Fed. R. Civ. P. 23(b)(3).

**A. Class Definition**

"[C]ourts must be vigilant to ensure that a certified class is properly constituted." *Powers v. Hamilton Cnty. Public Defender Comm'n*, 501 F.3d 592, 619 (6th Cir. 2007). The court must conclude that the named plaintiff seeking certification proposes an identifiable, unambiguous class

Case No. 1:09-CV-2954
Gwin, J.

of which they are members. *Tedrow v. Cowles*, No. 2:06-CV-637, 2007 WL 2688276, at *5 (S.D. Ohio Sept.12, 2007). The district court has broad discretion to modify the definition of a class. *Powers*, 501 F.3d at 619.

> Plaintiff Pfaff proposes the following class definition:
>
> All Ohio individuals who purchased a case of products from the Defendants' stores for purposes that are primarily personal, family, or household, but did not receive the discount. Excluded from this Class are the Defendants, Defendants' officers, Defendants' directors, Defendants' employees and the Judge to which this case is assigned.

[Doc. 32 at 1.] Whole Foods says the proposed class is ambiguous and unworkable because it potentially includes purchases at its stores outside Ohio so long as the purchases were made by Ohioans. [Doc. 34 at 11 n.2.] Moreover, the Court notes that it was not until September 8, 2008 that Whole Foods uniformly established its case-discount program. [Doc. 41-1 at 15.]

> Accordingly, the Court redefines Plaintiff's proposed class as follows:
>
> All Ohio residents who purchased a case of products from a Whole Foods store in Ohio on or after September 8, 2008, for purposes that are primarily personal, family, or household, but did not receive the 10% case discount. Excluded from this Class are Whole Foods' officers, directors, and employees, and the Judge and his staff to which this case is assigned.

The Court's modified definition also comports with the two-year statute of limitations for Plaintiff's claim brought under the Ohio Consumer Sales Practices Act, Ohio Rev.Code § 1345.01, *et seq*. Ohio Rev.Code § 1345.10(C). With this definition in mind, the Court proceeds with analysis of the Rule 23 requirements.

### B. Rule 23(a) Prerequisites

*1. Rule 23(a)(1): Numerosity*

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous

Case No. 1:09-CV-2954
Gwin, J.

that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). The practicability of joinder depends on the size of the class, the ease of identifying members, the ability to make service, and their geographic dispersion. "Where the exact size of the class is unknown but general knowledge and common sense indicate that it is large, the numerosity requirement is satisfied." *Olden v. LaFarge Corp.*, 203 F.R.D. 254, 269 (E.D. Mich. 2001) (quotation omitted).

Pfaff says the proposed class is so numerous that joinder of all members is impracticable because the class likely numbers in the "thousands." [Doc. 41 at 9.] Pfaff say that Whole Foods sells thousands of cases every week in Ohio. [Doc. 32-1 at 10.] And because Whole Foods systemically fails to program their cash registers to give the case discount, Pfaff continues, there will be many class members who did not receive it. [Doc. 32-1 at 10.] Without contending that it properly codes all or even most case purchases, Whole Foods disputes this claim, but does not elaborate on the size of the class. Rather, Whole Foods says that Pfaff is unable to identify the size of the class because it does not maintain copies of store receipts or customer lists. [Doc. 34 at 16.]

Pfaff conducted a sample review of cashier logs from one Ohio Whole Foods store and identified ten instances of wrong-case-price issues in a single month. [Doc. 41-1 at 10.] Based on this evidence, extrapolated over the six Ohio Whole Foods stores since September 2008, common sense indicates that the proposed class includes at least several thousand members. The Court therefore finds that joinder would be impracticable and Pfaff has satisfied her burden to establish numerosity.

*2. Rule 23(a)(2): Commonality*

The plaintiff must also show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). A class representative must "be part of the class and possess the same interest and suffer

Case No. 1:09-CV-2954
Gwin, J.

the same injury as the class members." *Falcon,* 457 U.S. at 156 (internal quotation omitted). In this regard, there need only be one question common to the class, the resolution of which will advance the litigation. *Sprague,* 133 F.3d at 397.

Although Defendants correctly observe that this Court and others have refused to certify classes in cases rife with individualized issues of reliance and causation, this is not such a case. *See e.g., Faktor v. Lifestyle Lift*, No. 1:09-CV-511, 2010 WL 271346, at *4-5 (N.D. Ohio Jan. 15, 2010) (denying class certification for lack of commonality where representations about surgical procedures were not uniform across potential class, class members attended mandatory individual consultations prior to electing procedure, and class members had several procedure combinations from which to choose). In fact, even in affirming the denial of class certification in *Sprague*, the Sixth Circuit recognized that claims based on largely uniform representations to a discrete group could be certified in the appropriate case. *See Sprague v. General Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998) (en banc).

Here, there are many common factual and legal issues among the class members. For example, all class members purchased a case of products at an Ohio Whole Foods store, and Whole Foods made the same or substantially similar representations to all class members regarding the 10% case discount. Common legal issues include whether Whole Foods' advertisements or representations were false or misleading and whether they were material, as well as whether Whole Foods breached its contracts with the class members by failing to provide the promised case discount. The resolution of these questions would advance the instant litigation. Accordingly, Pfaff has shown sufficient commonality.

*3. Rule 23(a)(3): Typicality*

Case No. 1:09-CV-2954
Gwin, J.

Under Rule 23(a)(3), a plaintiff seeking class certification needs to show that his or her claims are typical of other potential class members' claims. Fed. R. Civ. P. 23(a)(3). The Sixth Circuit has described this: "Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." Sprague, 133 F.3d at 399 (quotation omitted). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." Am. Medical Sys., 75 F.3d at 1082 (quotation omitted). Simply put, typicality exists when it can be said that "as goes the claim of the named plaintiff, so go the claims of the class." Sprague, 133 F.3d at 399.

In this case, Pfaff shows adequate typicality. The claims of Plaintiff Pfaff and those of the absentee class members arise from the same practice or course of conduct and involve the same legal theory and elements of proof. Like the claims of the class, Pfaff's claims arise from Whole Foods' failure to actually give the advertised case discount and failing to code its point-of-purchase registers to the advertised case discount.

Defendants do not specifically challenge typicality and *Sprague* is not dispositive. See Sprague, 133 F.3d at 399 (holding that class failed typicality requirement where "taken as a whole the class claims were based on *widely divergent facts*") (emphasis added). Thus, because Pfaff's claims can only be described as typical of the class, the Court finds the typicality requirement satisfied.

*4. Rule 23(a)(4): Adequacy*

A plaintiff seeking to represent the class must also show that he or she will "fairly and

Case No. 1:09-CV-2954
Gwin, J.

adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is "essential to due process, because a final judgment in a class action is binding on all class members." *Am. Med. Sys.,* 75 F.3d at 1083.

Adequacy of class representation is measured by three standards. First, named plaintiffs must demonstrate a basic understanding of the facts and legal claims comprising their case. *See In re AEP Erisa Litig.*, No. C2-03-67, 2008 WL 4210352, at *2 (S.D. Ohio Sept. 8, 2008). However, named plaintiffs need not demonstrate extensive or sophisticated knowledge about the case, nor are they required to show their participation in the litigation at every step of the way. *Id.* Second, class members must not have interests that are antagonistic to one another. *Am. Med. Sys.,* 75 F.3d at 1083. Third, class counsel must be qualified, experienced, and generally able to conduct the litigation. *Id.*

Defendants say Pfaff cannot adequately represent the class because she was originally unfamiliar with the complaint filed on her behalf. [Doc. 34 at 18.] That Pfaff lacks complete mastery of all the facts relevant to this case—specifically, each slight variation of Whole Foods' case-discount advertisements used at all six Ohio stores—hardly surprises. At the heart of Pfaff's complaint, and what makes this a prototypical class action, is that despite the syntax, each advertisement said exactly the same thing: buy a case of products and get 10% off that case. In any event, Pfaff's uncertainty does stop her from adequately representing the class claims.

Whole Foods also say that class counsel is not competent because "it has done virtually nothing to investigate the allegations in the complaint and . . . no discovery." [Doc. 34 at 18.] Counsel has, however, done enough discovery to adequately brief the instant motion. Thus, despite counsel's somewhat dilatory performance so far, the Court still finds counsel will adequately

-9-

Case No. 1:09-CV-2954
Gwin, J.

represent the class. Accordingly, the Court finds that Pfaff's interest in this litigation is coextensive with that of the unnamed class members, and she is perfectly capable of vigorously prosecuting this action through her well-qualified counsel.

### B. Rule 23(b) Standards

Although Pfaff has satisfied Rule 23(a)'s prerequisites, she must also show class certification proper under Rule 23(b). Here, Rule 23(b)(3) provides the appropriate grounds for certifying the class. Rule 23(b)(3) requires the plaintiff to show (1) that questions of law or fact common to the members of the class predominate over questions affecting only individual members and (2) that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. Fed. R. Civ. P. 23(b)(3).

*1. Rule 23(b)(3): Predominance*

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This requirement is satisfied when the questions common to the class are "at the heart of the litigation." *Powers*, 501 F.3d at 619. "[T]he mere fact that questions peculiar to each individual member of the class action remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Id*. (quoting *Sterling v. Velsicol Chem. Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988)). Cases involving allegations of "a single course of wrongful conduct are particularly well-suited to class certification." *Id*.

Here, Pfaff says that Whole Foods misled when it advertised the 10% case discount but then coded its computers not to give the promised discount. Pfaff further says that Whole Foods breached its contract with her and the class and violated Ohio consumer protection law by failing to deliver

-10-

Case No. 1:09-CV-2954
Gwin, J.

on its case-discount promise.

Of course, all of these issues involve single acts or omissions by Whole Foods that pertain to each member of the class. And although there may be some individualized questions relating to damages for each member's breach of contract, fraud, negligence, mistake, and unjust enrichment claims, this does not defeat class certification under Rule 23(b)(3). *See Sterling*, 855 F.2d at 1197 ("No matter how individualized the issue of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action.").

Therefore, because Pfaff's claims pertain largely to actions taken by Whole Foods vis-a-vis the class, the Court finds that the predominance requirement of Rule 23(b)(3) is satisfied.

*2. Rule 23(b)(3): Superiority*

Similarly, a class action is the superior method for adjudicating this controversy. Rule 23(b)(3) sets forth several non-exclusive factors to consider in determining whether certification of a class is superior to other available methods:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

With regard to class members' interest in controlling their individual litigation, because of the potentially large number of claimants and the relatively small amount of each individual claim, the class members likely have little interest in or ability to prosecute the claims separately. Rule 23(b)(3) class actions permit aggregation and litigation of many small claims that otherwise might not be brought because they lack economic viability. *See Deposit Guar. Nat'l Bank, Jackson, Miss.*

Case No. 1:09-CV-2954
Gwin, J.

*v. Roper*, 445 U.S. 326, 338-39 (1980). The "most compelling rationale for finding superiority in a class action" is the existence of a "negative value suit." A negative value suit is one in which the costs of enforcement in an individual action would exceed the expected individual recovery. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 348 (N.D.Ohio 2001).

With individual damages most likely under $100 (and perhaps under $10), this case is a negative value suit. This is a paradigmatic example of a case where the class action serves the purpose for class actions by permitting a group of individual consumers to vindicate whatever rights they may have in a single proceeding. It is beyond question that, due to the small amount of damages allegedly suffered by individual class members, maintenance of this case as a class action provides the only feasible procedural mechanism for the proposed class to pursue their claims.

The second factor—pending litigation—cuts in favor of certification. Only one other lawsuit concerning Whole Foods' case-discount program is pending and that case seeks a California-only class. The third factor—desirability of this forum—also weighs in favor of certification. Resolution of the class's claims in a single forum saves costs, promotes efficient use of judicial resources, and ensures that similar claims are treated in a consistent manner. Concentrating the claims in this forum, where the breach allegedly occurred and where many of the witnesses and much of the evidence presumably resides, is desirable.

Finally, the fourth factor—manageability—suggests certification. The damages inquiry, while clearly requiring individualized factual information, does not render the action unmanageable. Assuming liability is established, damages would be represented by the difference between what an individual paid and the discounted case price to which they were entitled but did not receive. The amount any class member paid is a single number, which should be readily ascertainable from their

Case No. 1:09-CV-2954
Gwin, J.

store receipts. Sure, the discount to which any individual would have been entitled depends on the products they purchased, but is still only a mathematical calculation which, in all likelihood, could be performed by a computer spreadsheet program. Indeed, "[v]arying damage levels rarely prohibit a class action if the class members' claims possess factual and legal commonality." *Eddleman v. Jefferson County, Ky.*, 96 F.3d 1448, 1996 WL 495013, at \*6 (6th Cir. Aug. 29, 1996).

The Court concludes that, given Pfaff's very strong interest in prosecuting this matter as a single class action, Pfaff has satisfied the superiority requirement. Thus, because common issues predominate and a class action is a superior method for adjudicating this case, class certification is appropriate under Rule 23(b)(3).

### IV. Conclusion

For the foregoing reasons, this Court **GRANTS** Plaintiff's Motion for Class Certification and **CERTIFIES** the following class:

> All Ohio residents who purchased a case of products from a Whole Foods store in Ohio on or after September 8, 2008, for purposes that are primarily personal, family, or household, but did not receive the 10% case discount. Excluded from this Class are Whole Foods' officers, directors, and employees, and the Judge and his staff to which this case is assigned.

This Court appoints the named Plaintiff, Cathy Pfaff, as class representative. After considering the relevant factors found in Fed. R. Civ. P. 23(g), the Court appoints Climaco, Wilcox, Peca, Tarantino & Garofoli Co., LPA, Piscitelli Law Firm, and Scott Kalish Co., LLC as class counsel.

The Court orders Plaintiff to provide the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort" of this

-13-

Case No. 1:09-CV-2954
Gwin, J.

pending litigation. Fed. R. Civ. P. 23(c)(2)(B).

    IT IS SO ORDERED.


Dated: September 29, 2010        s/      *James S. Gwin*
                                                        JAMES S. GWIN
                                                        UNITED STATES DISTRICT JUDGE